IN IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA

| | | |
|---|---|---|
| Steve Jenkins, | ) | C/A No.: 1:21-557-HMH-SVH |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | REPORT AND |
| | ) | RECOMMENDATION AND |
| | ) | ORDER |
| Food Service Administrator and | ) | |
| Cook Supervisor, | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

In this case, a Muslim prisoner was accidentally served pork while on institutional lockdown during Ramadan in 2019 and has sued, arguing his rights have been violated.

Steve Jenkins ("Plaintiff"), proceeding pro se and in forma pauperis, brings this action pursuant to *Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics*, 403 U.S. 388, 397 (1971), asserting violations of the First Amendment, the Religious Freedom Restoration Act ("RFRA"), 42 U.S.C. § 2000bb *et seq.*, and the policies of the Bureau of Prisons ("BOP"). Plaintiff alleges his rights were violated while he was incarcerated at the Federal Correctional Institution in Estill, South Carolina ("FCI-Estill"), and he asserts his claims against Michael Potts, Food Service Administrator ("Defendant"), and an unknown Cook Supervisor.

This matter comes before the court on Defendant's motion to dismiss, or

in the alternative, motion for summary judgment. [ECF No. 23].[1] Pursuant to *Roseboro v. Garrison*, 528 F.2d 309 (4th Cir. 1975), the court advised Plaintiff of the summary judgment procedures and the possible consequences if he failed to respond adequately to Defendant's motion. [ECF No. 24]. The motion having been fully briefed [ECF No. 33], it is ripe for disposition. Also before the court is Plaintiff's motion to amend his complaint and to compel discovery. [ECF Nos. 31, 34].

Pursuant to the provisions of 28 U.S.C. § 636(b)(1)(B), and Local Civ. Rule 73.02(B)(2)(d) (D.S.C.), this matter has been assigned to the undersigned for all pretrial proceedings. Having carefully considered the parties' submissions and the record in this case, the undersigned denies Plaintiff's motion to amend and to compel discovery and recommends the district judge grant Defendant's motion for summary judgment.

I.     Factual and Procedural Background

The parties agree on the relevant facts. Plaintiff was housed at FCI-Estill from November 10, 2015, to August 20, 2019. [ECF No. 23-2]. Plaintiff has been designated as a Muslim inmate since 2015. [ECF No. 23-3].

Ramadan is month of fasting in which Muslims abstain from food and water from dawn until sundown. [ECF No. 23-4]. During the relevant time

---

[1] Because the court has considered matters outside of the pleadings, the undersigned considers the motion as one for summary judgment. Fed. R. Civ.

frame, Ramadan was observed at FCI-Estill from sundown, Sunday, May 5, 2019, until June 6, 2019. *Id.* Inmates observing Ramadan during this timeframe would generally receive the breakfast meal in a bag and then fast without food or water until sundown. *Id.* Inmates would then report to Chapel at 8:00 p.m. and be escorted to the inmate dining room to receive the lunch and dinner meals in a takeout container to be consumed in their respective housing units. *Id.* In order to participate in the religious meal during Ramadan, inmates must register with Religious Service Department to request the special religious meal. *Id.* Plaintiff was registered to participate in the Ramadan meals in May 2019. *Id.*

At that time, however, FCI-Estill was on modified operations, also known as "lockdown," from May 24, 2019, through June 10, 2019. [ECF No. 23-1 ¶ 11]. During this time, all FCI-Estill inmates received satellite meal service in the housing units, as they were not allowed to go to the inmate dining room. *Id.* Inmates participating in Ramadan received the lunch and dinner satellite meals in their respective housing units after sundown to break their fasting. *Id.*

In his role as Food Service Administrator, Defendant ordered beef sausage for an inmate holiday meal to celebrate Memorial Day on May 27, 2019. *Id.* ¶ 12. The beef sausage was not on the National Menu or served

_____

P. 12(d).

3

specifically for Ramadan; it was purchased for the Memorial Day holiday meal as a substitute in compliance with BOP and FCI-Estill policies. *Id.*[2]

Defendant ordered the beef sausage to be served as a no-pork entrée with the impression and belief that the product was all beef. *Id.* Due to the FCI-Estill modified operations and satellite feeding, the beef sausage was utilized for the lunch meal on May 28, 2019, instead of the evening meal on Memorial Day, Monday, May 27, 2019. *Id.* ¶ 13. Inmates could self-select a no-pork or a no-flesh entrée in advance of the satellite meal served in the housing units. *Id.* Inmates participating in Ramadan meals received the lunch and dinner meals on May 28, 2019, in the housing unit to break their fasting. *Id.* In addition, a soy patty was available as the alternate no-flesh entrée. *Id.* Defendant did not personally prepare the beef sausage in his role as Food Service Administrator. *Id.* ¶ 14. Defendant supervises the cook supervisors and inmate food service workers prepare the food items to be served to inmates during each meal. *Id.*

On June 17, 2019, it was brought to the attention of other Food Service Department staff that the all-beef sausage was made with a pork casing. *Id.*

---

[2] As attested by Defendant, "[t]he BOP utilizes a National Menu for food service, 'which includes the approved menu, recipes, and product specifications, . . . used for food procurement, preparation, and meal service at all institutions.' Food items prepared or seasoned with pork are identified on all menus, as well as no-flesh protein and heart healthy alternatives. Food items, such as no-pork and no flesh protein entrees, are available through

¶ 15. Upon discovery, Defendant directed Food Service staff to discontinue use of the beef sausage and substituted a different no-pork entrée according to Food Service Policy. *Id.*

## II. Discussion

### A. Standard on Summary Judgment

The court shall grant summary judgment "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(a). The movant bears the initial burden of demonstrating that summary judgment is appropriate; if the movant carries its burden, then the burden shifts to the non-movant to set forth specific facts showing that there is a genuine issue for trial. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23 (1986). If a movant asserts that a fact cannot be disputed, it must support that assertion either by "citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials;" or "showing . . . that an adverse party cannot produce admissible evidence to support the fact." Fed. R. Civ. P. 56(c)(1).

---

Food Service year round, not just during Ramadan." [ECF No. 23-1 ¶ 7].

In considering a motion for summary judgment, the evidence of the non-moving party is to be believed and all justifiable inferences must be drawn in his favor. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986). However, "[o]nly disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment. Factual disputes that are irrelevant or unnecessary will not be counted." *Id.* at 248. Further, while the federal court is charged with liberally construing a complaint filed by a pro se litigant to allow the development of a potentially meritorious case, *see, e.g., Cruz v. Beto*, 405 U.S. 319 (1972), the requirement of liberal construction does not mean that the court can ignore a clear failure in the pleadings to allege facts that set forth a federal claim, nor can the court assume the existence of a genuine issue of material fact when none exists. *Weller v. Dep't of Soc. Servs.*, 901 F.2d 387 (4th Cir. 1990).

B.    Analysis

1.    Exhaustion of Administrative Remedies

Defendant argues Plaintiff failed to timely exhaust his administrative remedies as required by the Prison Litigation Reform Act ("PLRA"), specifically 42 U.S.C. § 1997e(a). Section 1997e(a) provides "[n]o action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are

exhausted." *Id.* This requirement "applies to all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong." *Porter v. Nussle*, 534 U.S. 516, 532 (2002). To satisfy this requirement, a plaintiff must avail himself of every level of available administrative review. *See Booth v. Churner*, 532 U.S. 731 (2001). Those remedies neither need to meet federal standards, nor are they required to be plain, speedy, and effective. *Porter*, 534 U.S. at 524.

Satisfaction of the exhaustion requirement requires "using all steps that the agency holds out, and doing so *properly.*" *Woodford v. Ngo*, 548 U.S. 81, 90 (2006) (quoting *Pozo v. McCaughtry*, 286 F.3d 1022, 1024 (7th Cir. 2002)) (emphasis in original)). Thus, "it is the prison's requirements, and not the [PLRA], that define the boundaries of proper exhaustion." *Jones v. Bock*, 549 U.S. 199, 218 (2007). Defendants have the burden of establishing that Plaintiff failed to exhaust his administrative remedies. *Anderson v. XYZ Corr. Health Servs., Inc.*, 407 F.3d 674, 683 (4th Cir. 2005). However, "an administrative remedy is not considered to have been available if a prisoner, through no fault of his own, was prevented from availing himself of it." *Moore v. Bennette*, 517 F.3d 717, 725 (4th Cir. 2008); *see also Ross v. Blake*, 136 S. Ct. 1850 (2018).

The BOP has a three-tiered formal administrative grievance process, although there is also an informal resolution process. *See* 28 C.F.R. §§ 542.10 *et seq.* An inmate may complain about any aspect of his confinement by first seeking to informally resolve the complaint at the institution level. 28 C.F.R. § 542.13. If the matter cannot be resolved informally, the inmate may file a formal written complaint to the warden within 20 calendar days after the date upon which the basis for the request occurred. 28 C.F.R. § 542.14. The matter will be investigated, and a written response provided to the inmate. *See Id.* If dissatisfied with the response, the inmate may appeal to the regional director within 20 days of the date of the warden's response. 28 C.F.R. § 542.15(a). If dissatisfied with the regional response, the inmate may appeal to the general counsel within 30 days of the regional director's response. *Id.* Appeal to the general counsel is the final level of agency review. 28 C.F.R. § 542.15(a).

The applicable regulations also provide as follows:

> Once filed, response shall be made by the Warden or CCM within 20 calendar days; by the Regional Director within 30 calendar days; and by the General Counsel within 40 calendar days. If the Request is determined to be of an emergency nature which threatens the inmate's immediate health or welfare, the Warden shall respond not later than the third calendar day after filing. If the time period for response to a Request or Appeal is insufficient to make an appropriate decision, the time for response may be extended once by 20 days at the institution level, 30 days at the regional level, or 20 days at the Central Office level. Staff shall inform the inmate of this extension in writing. Staff shall respond

in writing to all filed Requests or Appeals. If the inmate does not receive a response within the time allotted for reply, including extension, the inmate may consider the absence of a response to be a denial at that level.

28 C.F.R. § 542.18

The parties appear to agree as to the actions Plaintiff took to exhaust his administrative remedies. [*See* ECF No. 33 at 1–8]. Plaintiff began the administrative process in July 2019, filing an informal resolution form claiming he had been given pork on Ramadan in violation of his First Amendment rights. [ECF No. 9-1 at 1]. Plaintiff then filed a formal written request that was rejected and then an appeal in September 2019. *Id.* at 4–5. On March 10, 2020, the Southeast Regional Office ("SERO") rejected Plaintiff's appeal for the following reasons: Plaintiff failed to provide a copy of his BP-9 response from the warden; he failed to submit a complete set of the request or appeal form; and he failed to comply with the requirement that inmates may file only one 8½ x 11 continuation page with the appeal. *Id.* at 6.

Plaintiff was allowed to resubmit his appeal in proper form within ten days of the date of the rejection notice. *Id.* However, Plaintiff failed to do so or provide an explanation as to his inability to do so.[3] Additionally, because the SERO did not respond to Plaintiff's regional appeal within the 30-day

---

[3] It appears that Plaintiff did not receive a copy of his BP-9 from the warden because Plaintiff was in transit from FCI-Estill to FCI Coleman-Low. [*See* ECF No. 33 at 6].

response timeframe, Plaintiff could have appealed to the BOP Central Office on or after October 25, 2019, indicating that he never received the SERO response to regional appeal.

Instead, Plaintiff filed an appeal to the BOP Central Office around October 26, 2020, over a year later. [ECF No. 9-1 at 8]. This appeal, Remedy #986229-A1, was rejected on November 6, 2020, for the following reason: "Concur with rationale of regional office and/or institution for rejection. Follow directions provided on prior rejection notices." [ECF No. 1-1 at 4].

Plaintiff does not dispute the above facts, but argues that the administrative process was unavailable to him primarily due to lack of response or timely response on the part of the BOP, and he has submitted evidence that he inquired about the status of his various complaints to no avail, beginning May 31, 2020. [*See, e.g.*, ECF No. 33-1]. However, Plaintiff does not provide argument or evidence as to why he did not timely and properly file or refile his complaints at the various levels.

Defendant disagrees the administrative process was unavailable and has submitted evidence that Plaintiff was actively pursuing seven other administrative remedies during the same time frame. [*See* ECF No. 23 at 15]. Defendant argues that Plaintiff's failure to properly resubmit his grievances to the SERO and Central Office on the First Amendment claims deprived the BOP of the opportunity to respond to his allegations. *See Moore v. Bennette*,

517 F.3d 717, 725 (4th Cir. 2008) ("[A] prisoner does not exhaust all available remedies simply by failing to follow the required steps so that remedies that once were available to him no longer are.").[4]

Based on the current record, where it is undisputed that Plaintiff did not exhaust his administrative remedies and where Plaintiff has failed to submit evidence supporting his argument that the administrative process was unavailable to him, the undersigned recommends granting Defendant's motion for summary judgment as to Plaintiff's claims for failure to exhaust his administrative remedies.

2.    Plaintiff's RFRA Claim

Even if Plaintiff had exhausted his administrative remedies, his claims against Defendant fail for additional reasons. The RFRA provides that the "Government shall not substantially burden a person's exercise of religion even if the burden results from a rule of general applicability." 42 U.S.C.A. § 2000bb-1 (West). To establish a claim under RFRA, a plaintiff must show that a defendant's action (1) substantially burdens (2) plaintiff's sincere religious exercise. *Gonzales v. O Centro Espirita Benficente Uniao do Vegetal*, 546 U.S. 418, 428 (2006). If he does so, the burden shifts to

---

[4] Defendant additionally argues that because Plaintiff failed to assert any claim under the RFRA through the administrative remedy process, the BOP was also deprived of the opportunity to address Plaintiff's RFRA claim. [*See* ECF No. 23 at 16].

defendant to show that the application of the burden to plaintiff (1) furthers a "compelling governmental interest" and (2) is the "least restrictive means" of furthering that interest. 42 U.S.C.A § 2000bb–1(b) (West). A "substantial burden on religious exercise occurs when a state or local government, through act or omission, 'put[s] substantial pressure on an adherent to modify his behavior and to violate his beliefs.'" *Lovelace v. Lee*, 472 F.3d 174, 187 (4th Cir. 2006) (citation omitted).

Additionally, Defendant has asserted a qualified immunity defense. Under the qualified immunity defense, "government officials performing discretionary functions generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). Qualified immunity ensures that "[o]fficials are not liable for bad guesses in gray areas; they are liable for transgressing bright lines." *Maciariello v. Sumner*, 973 F.2d 295, 298 (4th Cir. 1992). Whether an officer is entitled to qualified immunity is a question of law for the court and, when there are no relevant disputed material facts, a court should rule on the qualified immunity issue at the summary judgment stage. *Willingham v. Crooke*, 412 F.3d 553, 558 (4th Cir. 2005) ("Ordinarily, the question of qualified immunity should be decided at the summary judgment stage.").

To resolve a qualified immunity defense, the court must (1) determine whether the facts alleged, taken in the light most favorable to the plaintiff, show that the defendant's conduct violated a constitutional right, and (2) determine whether the right was clearly established at the time of the alleged misconduct. *Pearson v. Callahan*, 555 U.S. 223, 232 (2009). Courts may address the two prongs of the qualified immunity analysis in whichever order is appropriate in light of the circumstances of the particular case at hand. *Id.*

That Plaintiff was accidentally served pork during Ramadan does not violate any clearly-established statutory right. While few courts have reviewed the exact issue in this case, several district courts have reviewed similar issues, indicating that substitution of a religious meal item in error does not rise to the level of a RFRA violation.

In *Jones v. Bailey*, C/A No. 7:16-469, 2018 WL 1513297, at *1 (W.D. Va. Mar. 27, 2018), the inmate claimed that he was served "pork-tainted" foods in Nation of Islam ("NOI") Common Fare meals to break his fast during Ramadan and he was forced to consume foods he did not want to eat. *Id.* The court disagreed and stated that "[e]ven if he was presented with more varied food items on the NOI Common Fare, variation of NOI acceptable foods does not compel him to eat them." *Id.* at *7. The court noted that the foods were not served by the defendant BOP staff members with the intent to violate his

13

rights under the Religious Land Use and Institutionalized Persons Act ("RLUIPA").[5] The court held:

> [u]nder either the First Amendment or RLUIPA, the inmate must also demonstrate that the substantial burden was a product of a defendant's conscious or intentional interference with religious rights. *Wall v. Wade*, 741 F.3d 492, 500 n.11 (4th Cir. 2014). "Allowing negligence suits to proceed under RLUIPA [or the First Amendment] would undermine . . . deference [to the experience and expertise of prison and jail administrators] by exposing prison officials to an unduly high level of judicial scrutiny." *Lovelace*, 472 F.3d at 194; *see Shaheed v. Winston*, 885 F. Supp. 861, 868 (E.D. Va. 1995), *aff'd*, 161 F.3d 3 (4th Cir. 1998). Consequently, less than intentional conduct is not sufficient to meet the fault requirements under RLUIPA or the First Amendment.

*Id.* at *6; *see also Cooper v. Nimirowski*, C/A No. 14-11-SM, 2014 WL 1003842, at *1 (D.N.H. Mar. 13, 2014) ("Cooper's allegation that, on two occasions, he was served a meal that contained pork is insufficient to assert a plausible claim that his religious practice has been 'substantially burdened' under either the First Amendment or RLUIPA."); *Blount v. Jabe*, C/A No. 7:07-00480, 2007 WL 3275150, at *4 (W.D. Va. Nov. 5, 2007) ("Plaintiff's allegation that the two instances of serving him trays allegedly out of conformity with the Common Fare diet violates [RLUIPA] likewise fails, as plaintiff has not shown that these isolated incidents substantially burdened

---

[5] It is established that "[b]ecause of the close connection in the purpose and language between [RLUIPA and RFRA], courts commonly apply case law decided under RFRA to issues that arise under RLUIPA and vice versa." *Lebron v. Rumsfeld*, 670 F.3d 540, 557 (4th Cir. 2012) (citation omitted).

his exercise of religion . . . . he does not allege that the diet choices remaining on his meal tray on those dates (were he to abstain from eating one of the offensive servings, the consumption of which would violate his religious convictions) substantially burdened his religious practice, or that he could not maintain an adequate diet on those dates by choosing from the remaining items") (citations omitted)); *Thomas v. Condit*, C/A No. 1:05-203-1-MU, 2006 WL 1642226, at *2 (W.D.N.C. June 13, 2006) ("There is no evidence anywhere in the record that Defendant Condit had any idea that the memo incorrectly set forth the dates for the observance of the festive meals for Passover. There is no evidence to support a conclusion that a reasonable person in Defendant Condit's position would have known that the dates in the memo were incorrect. Consequently, this Court concludes that Defendant Condit is immune from money damages with regard to Plaintiff's Passover claim. Moreover, this Court concludes that an isolated mistake does not amount to a violation of RLUIPA.").

In contrast to the above cases, in *Bayadi v. Clarke*, C/A No. 7:16-00003, 2017 WL 1091946, at *2 (W.D. Va. Mar. 22, 2017), the plaintiff complained of a general practice employed by the Virginia Department of Corrections:

> Bayadi explains, as a Muslim, he has a sincerely-held religious belief that his food, utensils, and tray must not contact any surface that has contacted something "contaminated" by pork. Thus, Bayadi argues that his Common Fare meal cannot be transported in the same unsanitary cart that has held "pork-

contaminated" regular trays. Bayadi further argues that the same officer who handles "pork-contaminated" regular trays cannot handle his Common Fare trays. Consequently, Bayadi argues that the officer defendants violate the First Amendment, RLUIPA, and the Virginia Constitution by serving him "pork-contaminated" Common Fare trays.

The court denied summary judgment as to the plaintiff's First Amendment and RLUIPA claims, holding "it had been clearly established that a reasonable official in defendants' positions could not serve to a Muslim inmate foods on trays 'contaminated' by pork." *Id.* at *5.

Plaintiff has not submitted evidence that being served the pork at issue was more than an isolated incident. He also has not argued or submitted evidence that he ate the pork at issue to break his fast during Ramadan, only that it was served to the Muslim population. The record does not indicate Plaintiff was pressured or forced to consume the food item, and there was also a no-flesh protein option available during the satellite meal. Additionally, there appears to be no dispute that Defendant ordered the beef sausage to be served as a no-pork substitute at a holiday meal to celebrate Memorial Day. There is no evidence that the food item was served during Ramadan out of ill will or malice, but rather out of Defendant's good-faith efforts to provide a holiday meal for Memorial Day. Defendant ordered what he thought was 100% beef sausage, not realizing it contained a pork component. Once Food Service Department staff realized there was a pork

component in the beef sausage entrée, they discontinued its use as a no-pork entrée.

Accordingly, Defendant did not intentionally set out to interfere with, or violate, Plaintiff's religious beliefs. Defendant's conduct did not violate Plaintiff's rights arising under the RFRA.[6] Because there is no violation—much less a clear violation—Defendant is entitled to qualified immunity, and the undersigned recommends granting Defendant's motion for summary judgment as to this claim.

---

[6] Plaintiff also argues that Defendant violated his rights by failing to train his staff "to examine the new product for pork or allergen." [ECF No. 33 at 9–10, 12, 14]. To the extent Plaintiff can bring such a claim under the RFRA, and brings such a claim here, he has failed to demonstrate that any failure to train or supervise caused him to be deprived of the right to exercise his religion. *See, e.g., Slakan v. Porter*, 737 F.2d 368, 373 (4th Cir. 1984) (stating that plaintiffs in supervisory liability cases bear a "heavy burden of proof" that cannot ordinarily be satisfied "by pointing to a single incident or isolated incidents"); *Hoffman v. Lassen Adult Det. Facility*, C/A No. 2:15-1558-JAM-KJNP, 2017 WL 2535461, at *17 (E.D. Cal. June 12, 2017) ("Plaintiff's own, isolated, experience cannot support a failure to train claim. Accordingly, defendant Growden should be granted summary judgment as to plaintiff's RLUIPA claim for damages brought against him in his official capacity") (citation omitted)), report and recommendation adopted, C/A No. 2:15-1558-JAM-KJNP, 2017 WL 4310507 (E.D. Cal. Sept. 28, 2017); *see also Patel v. Bureau of Prisons*, 125 F. Supp. 3d 44, 56 (D.D.C. 2015) ("Thus, to assert a claim for supervisory liability under RFRA, Plaintiff must allege that Defendant Lappin's failure to supervise his subordinates was 'highly likely, given the circumstances of the case' to give rise to a constitutional violation.").

3.    Plaintiff's *Bivens* Claim

a.    First Amendment *Bivens* Claim

The First Amendment protects an individual's right to the free exercise of religion. U.S. Const. amend I. Although incarcerated, a prisoner still "retains those First Amendment rights that are not inconsistent with his status as a prisoner or with the legitimate penological objectives of the corrections system." *Pell v. Procunier*, 417 U.S. 817, 822 (1974). However, as with a claim arising under RFRA and RLUIPA, a prisoner asserting a First Amendment free exercise claim must demonstrate that a defendant's conduct has substantially burdened his religious exercise. *See, e.g., Hernandez v. Comm'r.*, 490 U.S. 680, 699 (1989). Moreover, the RFRA and "RLUIPA provides more protection to inmates' free exercise rights than does the First Amendment." *Al-Amin v. Shear*, 325 F. App'x 190, 194 n.3 (4th Cir. 2009) (citing *Lovelace*, 472 F.3d at 199–200). Thus, "[w]here an inmate has not put forth sufficient evidence under RLUIPA [or RFRA] to demonstrate a substantial burden on his religious exercise, his claim fails under the Free Exercise Clause of the First Amendment as well." *Van Wyhe v. Reisch*, 581 F.3d 639, 657–58 (8th Cir 2009); *see also, e.g., see also Mbonyunkiza v. Beasely*, C/A No. 4:17-293S-MRS-BJ, 2018 WL 10483964, at *6 (S.D. Iowa Sept. 28, 2018), *aff'd sub nom. Mbonyunkiza v. Beasley*, 956 F.3d 1048 (8th Cir. 2020) (collecting cases analyzing First Amendment claims and holding

18

"[m]ultiple courts agree inadvertent and isolated incidents of religious dietary missteps do not, as a matter of law, constitute a substantial burden on a plaintiff's religion").

Accordingly, based on this case law and for the reasons discussed above in connection with Plaintiff's RFRA claim, the undersigned recommends Defendant is entitled to summary judgment on Plaintiff's First Amendment claim, as well.[7]

b.    Official Capacity *Bivens* Claims

Additionally, Plaintiff's *Bivens* claims for monetary damages against Defendant in his official capacity fail. A *Bivens* action is a judicially-created damages remedy designed to vindicate violations of constitutional rights by federal actors. *See Bivens*, 403 at 395–97. "The purpose of *Bivens* is to deter individual federal officers from committing constitutional violations." *Correctional Servs. Corp. v. Malesko*, 534 U.S. 61, 70 (2001). Thus, a *Bivens* action will not lie against either federal agencies or officials in their official capacity. *See Doe v. Chao*, 306 F.3d 170, 184 (4th Cir. 2002) (citing *F.D.I.C. v. Meyer*, 510 U.S. 471, 486 (1994)). Accordingly, the undersigned recommends dismissal of Plaintiff's *Bivens* claims against Defendant in his official capacity for monetary damages.

---

[7] Given the recommendation above, it is unnecessary to address Defendant's argument that there is no First Amendment *Bivens* remedy. [*See* ECF No. 23

c. *Bivens* Claims Based on Supervisory Liability

To the extent Plaintiff brings this action against Defendant in a supervisory capacity, the claim fails. Generally, the doctrine of vicarious liability is inapplicable to a *Bivens* action, such that an employer or supervisor is not liable for the acts of his employees, absent an official policy or custom which results in illegal action. *See Monell v. Dep't of Social Services of City of New York*, 436 U.S. 658, 694 (1978). Higher officials may be held liable for the acts of their subordinates, however, if the official is aware of a pervasive, unreasonable risk of harm from a specified source and fails to take corrective action as a result of deliberate indifference or tacit authorization. *Slakan*, 737 F.2d at 372; *see also Shaw v. Stroud*, 13 F.3d 791 (4th Cir. 1994).

Here, Plaintiff has not alleged an official policy or custom resulting in an alleged constitutional violation or that Defendant was deliberately indifferent to a pervasive, unreasonable risk of harm. Accordingly, the undersigned recommends the district judge dismiss Plaintiff's *Bivens* claim brought against Defendant based on supervisory liability.

4. Claims Based on BOP Policy

Plaintiff also asserts that Defendant violated his religious rights under BOP policy. A claim that the BOP or one of its employees violated policy fails

_____

at 18–24].

to rise to the level of a constitutional violation and is not cognizable under *Bivens*. *See, e.g., Scates v. Doe*, C/A No. 6:15-2904-MBS-KFM, 2016 WL 8672963, at *7 (D.S.C. May 6, 2016) ("A claim that the BOP or one of its employees violated policy fails to rise to the level of a constitutional violation and is not cognizable under *Bivens*"), report and recommendation adopted, C/A No. 6:15-2904-MBS-KFM, 2016 WL 3769449 (D.S.C. July 13, 2016); *Singleton v. Admin. Food Serv. Brown*, C/A No. 1:12-02985-RBH, 2014 WL 3687348, at *5 (D.S.C. July 24, 2014) (holding in a *Bivens* action the failure to follow BOP policies, standing alone, does not amount to a constitutional violation), *aff'd sub nom. Singleton v. Nelson*, 589 F. App'x 86 (4th Cir. 2014).[8]

Here, Plaintiff is not able to bring a claim against Defendant for violation of BOP policy, and the undersigned recommends the district judge grant Defendant's motion for summary judgment as to this claim.

---

[8] At most, Plaintiff's claims constitute a claim of negligence which is not actionable under the First Amendment or the RFRA. *See, e.g., Lovelace*, 472 F.3d at 194, 201 (finding that "negligence . . . does not suffice to meet the fault requirement under section 3 of RLUIPA" and "negligent acts by officials causing unintended denials of religious rights do not violate the Free Exercise Clause"); *see also, e.g., Damon v. United States*, C/A No. 1:15-02216, 2016 WL 11268516, at *1 n.3 (S.D.W. Va. May 11, 2016) ("Negligent acts by prison officials causing an unintended denial of religious rights does not violate the Free Exercise Clause or Religious Freedom Restoration Act"), report and recommendation adopted, C/A No. 1:15-02216, 2017 WL 912113

5.     Injunctive Relief

To the extent Plaintiff seeks injunctive relief ordering the BOP to stop serving pork to inmates during Ramadan and institutional lockdowns, his claims are moot.

Plaintiff is no longer incarcerated at FCI-Estill. He was transferred to FCI-Coleman-Low and is currently incarcerated there. "[A]s a general rule, a prisoner's transfer or release from a particular prison moots his claims for injunctive and declaratory relief with respect to his incarceration there." *Rendelman v. Rouse*, 569 F.3d 182, 186 (4th Cir. 2009).

Although a claim is not moot if the circumstances are capable of repetition that would evade judicial review, *id.* at 187, jurisdiction on such basis "is limited to the exceptional situation where (1) the challenged action is in its duration too short to be fully litigated prior to cessation or expiration, and (2) there is a reasonable expectation that the same complaining party will be subject to the same action again." *Incumaa v. Ozmint*, 507 F.3d 281, 289 (4th Cir. 2007) (citations omitted).

Here, however, there is no indication that the circumstances about which he complains in this case would be repeated at FCI-Coleman-Low, particularly because Plaintiff does not challenge a particular policy or regulation, but simply one instance in which an improper menu item was

---

(S.D.W. Va. Mar. 7, 2017).

unknowingly served. *See, e.g., Fields v. Houser*, C/A No. 2:16-3251-TMC-MGB, 2017 WL 1363905, at *4 (D.S.C. Feb. 9, 2017) (finding "exceptional situation" not present where plaintiff challenged actions taken by the prison processing center but where "there is no reasonable expectation that [p]laintiff will be transferred back to the initial processing center"), report and recommendation adopted, C/A No. 2:16-3251-TMC, 2017 WL 1329374 (D.S.C. Apr. 11, 2017); *Lyons v. Meese*, C/A No. 88-7765, 1990 WL 101608, at *1 (4th Cir. June 22, 1990) ("We conclude that the challenged action was not 'in its duration too short to be fully litigated,' nor is there a 'reasonable expectation' or a 'demonstrated probability' that the same controversy will recur between Lyons and defendants.").

Accordingly, the undersigned recommends the district judge dismiss Plaintiff's claim for injunctive relief.

### 6.    Plaintiff's Motions to Amend and to Compel Discovery

Turning to Plaintiff's motions, first Plaintiff seeks to amend his complaint to add the following parties: (1) outside warehouse food service material handler, (2) Cory Hood, and (3) George Redmon. [*See* ECF No. 31]. Although leave to amend shall be freely given when justice so requires, "[a] district court may deny a motion to amend when the amendment would be prejudicial to the opposing party, the moving party has acted in bad faith, or the amendment would be futile." *Equal Rights Ctr. V. Niles Bolton Assocs.,*

602 F.3d 597, 602–03 (4th Cir. 2010).

Plaintiff has failed to submit a proposed amended complaint and failed to identify the actions these proposed defendants allegedly took in violation of his rights. *See, e.g., Mena v. Lack's Beach Serv., Inc.*, C/A No. 4:06-2536-TLW-TER, 2007 WL 9753156, at *7 (D.S.C. June 11, 2007) ("Plaintiff failed to submit with its motion a copy of the proposed amended complaint. This alone is grounds for denial of the motion."). Additionally, allowing Plaintiff to amend this late stage of litigation would be prejudicial to Defendant. Accordingly, Plaintiff's motion to amend is denied.

Also pending before the court is Plaintiff's motion to compel discovery. [ECF No. 34]. Plaintiff argues he has not received any of the discovery he requested and that the court order to be provided no later than July 19, 2021. [*See* ECF No. 29]. Defendant, in response, has provided a legal mail log showing that Plaintiff received the relevant discovery, and signed for it, on July 22, 2021, also providing the discovery provided. [*See* ECF Nos. 35, 35-1, and 35-2]. Plaintiff has not filed a response or otherwise addressed Defendant's filings, and the time to do so has expired. Therefore, the undersigned denies as moot Plaintiff's motion to compel discovery.

III.    Conclusion

For the foregoing reasons, the undersigned denies Plaintiff's motion to amend [ECF No. 31], denies as moot Plaintiff's motion for discovery [ECF No. 34], and recommends the district judge grant Defendants' motion for summary judgment. [ECF No. 23].

IT IS SO ORDERED AND RECOMMENDED.

August 27, 2021                              Shiva V. Hodges
Columbia, South Carolina                     United States Magistrate Judge

**The parties are directed to note the important information in the attached
"Notice of Right to File Objections to Report and Recommendation."**

### Notice of Right to File Objections to Report and Recommendation

The parties are advised that they may file specific written objections to this Report and Recommendation with the District Judge. Objections must specifically identify the portions of the Report and Recommendation to which objections are made and the basis for such objections. "[I]n the absence of a timely filed objection, a district court need not conduct a de novo review, but instead must 'only satisfy itself that there is no clear error on the face of the record in order to accept the recommendation.'" *Diamond v. Colonial Life & Acc. Ins. Co.*, 416 F.3d 310 (4th Cir. 2005) (quoting Fed. R. Civ. P. 72 advisory committee's note).

Specific written objections must be filed within fourteen (14) days of the date of service of this Report and Recommendation. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b); *see* Fed. R. Civ. P. 6(a), (d). Filing by mail pursuant to Federal Rule of Civil Procedure 5 may be accomplished by mailing objections to:

Robin L. Blume, Clerk
United States District Court
901 Richland Street
Columbia, South Carolina 29201

**Failure to timely file specific written objections to this Report and Recommendation will result in waiver of the right to appeal from a judgment of the District Court based upon such Recommendation.** 28 U.S.C. § 636(b)(1); *Thomas v. Arn*, 474 U.S. 140 (1985); *Wright v. Collins*, 766 F.2d 841 (4th Cir. 1985); *United States v. Schronce*, 727 F.2d 91 (4th Cir. 1984).